UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON KUTCHINSKI,

      Plaintiff,

v.                            Case No. 22-10045

MATTHEW A. CAIRY,        Sean F. Cox
                                United States District Court Judge

      Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

      This is the second of two related federal cases filed by Plaintiff Jason Kutchinski, as parent and next friend to H.K., a minor ("Plaintiff" or "Kutchinski").  The Court granted summary judgment in Defendants' favor in the first case.  In this second case, Plaintiff asserts just one claim – a First Amendment retaliation claim against Defendant Matthew Cairy.  The matter is currently before the Court on Defendant's Motion to Dismiss.  The parties have briefed the issues.  The Court concludes that hearing is not necessary and will rule on the briefs.  For the reasons set forth below, the Court shall GRANT Defendant's motion and dismiss this action.

## BACKGROUND

      On December 30, 2019, Plaintiff  filed suit against the Freeland Community School District, its Superintendent Matthew Cairy, and High School Principal Traci Smith.  The case was assigned Case Number 19-13810 and was originally assigned to the Honorable Judith Levy.  For ease of reference, the Court refers to that as the "First Case."   In Plaintiff's First Amended Complaint in the First Case, Plaintiff asserted the following claims: 1) "First Amendment

1

Violations" (Count I); and 2) "Void for Vagueness/Overbreadth 42 U.S.C. § 1983" (Count II).

In broad strokes, the First Case involved H.K.'s ten-day suspension for his actions in having posted a fake Instragram account impersonating a teacher at his high school. In pursuing his claims in the First Action, Plaintiff sought to prove that nothing H.K. did, including his posts to the account, "caused any material disruption of classwork or involved a substantial disorder or invasion of the rights of other students while in the classroom." (ECF No. 22 at 2). So in discovery, Plaintiff served a discovery request that sought to have Defendants answer "no" to the following interrogatory:

> 1.    INTERROGATORY: Did the Instagram account at issue in this case materially disrupt classwork or involve a substantial disorder or invasion of the rights of other students while in the classroom? If no, state "no." If yes, state "yes."

(ECF No. 22-2 at PageID.309). In a follow-up interrogatory, if the Defendants answered "yes" to the above interrogatory, Plaintiff asked Defendants to provide "the names of all students who suffered the alleged disruption/disorder/invasion." (*Id*. at PageID.310). In another interrogatory, Plaintiff requested that, for every student referenced in Defendants' answers, Defendant provide "the student's name together with the full name, address, telephone number, and/or email address of every parent of said student." (*Id*.).

Defendants submitted a discovery response that asserted objections – including that the student information sought by Plaintiff is protected by FERPA. Notwithstanding their objections, Defendants stated, in pertinent part, that "[u]pon discovery of the circumstances surrounding the creation of the bogus Instagram page in the name of a staff member employed by the Freeland Community Schools, the District was forced to undertake efforts to investigate the circumstances surrounding same. Further, *the District became aware of additional*

*disruptions in the form of students and staff discussing the Instragram page at length during*

*school hours.* The District administration and staff also were aware of *students utilizing their*

*smart phones during school hours in furtherance of discussions surrounding the creation of the*

*Instragram page.*" (ECF No. 22-3 at PageID.314-15) (emphasis added).

Plaintiff filed a Motion to Compel Discovery, asserting that counsel had a dispute about

the scope and application of FERPA as it relates to the requested information about students.

Plaintiff first asserted that Defendants should have to provide the requested student information

without a protective order. (ECF No. 31 in First Case). In his Reply Brief, however, Plaintiff

conceded that the "argument that Defendants cannot release information without a subpoena or

court order is not an unreasonable reading" of FERPA. (ECF No. 34 at PageID.369 in First

Case).

And Plaintiff's counsel made that concession with good reason. "For the last quarter of a

century," the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g), 34 C.F.R. Part 99

(the "FERPA") has helped protect the privacy interests of students and their parents. In fact,

Congress enacted the FERPA 'to protect [parents; and students'] rights to privacy by limiting the

transferrability of their records without their consent.'" *U.S. v. Miami University*, 294 F.3d 797,

806 (6th Cir. 2002). Among other things, the FERPA requires that an educational institution

make reasonable effort to provide notice to students and parents prior to disclosing educational

records, including those that contain personal identifying information. The notice is required

even when disclosure is subject to a court order. *See Borwning v. University of Findlay Bd. of*

*Trustees*, 2016 WL 4079128 (N.D. Ohio 2016).

Thereafter, on January 4, 2022, Judge Levy issued a "Stipulated Order" (ie., an order

requested by both parties, that both parties stipulated and agreed to) that provided, in pertinent

part:

> Certain records requested in discovery may fall under protection of the
> Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and 34 C.F.R.
> Part 99 ("FERPA"). Disclosure of covered records is authorized under FERPA to
> "comply with a judicial order or lawfully issued subpoena." On stipulation, the
> Court therefore enters this ORDER authorizing Defendants to provide the records
> and information sought by Plaintiff as part of this case. Should any party to this
> case, including counsel, disclose any covered records to any outside person or
> entity, the producing party and/or counsel shall do so subject to the following: (1)
> the producing party and/or counsel shall ensure that the receiving party, prior to
> releasing said documents, be provided a copy of this Order; and (2) the receiving
> party, through receipt of this order, is on notice that their use and possession of
> the documents is subject to further order of the Court. This Order extends to any
> similar records or information sought by Plaintiff via the discovery process and is
> deemed ongoing and continuous throughout the case for purposes of disclosure of
> personally identifiable information under FERPA. Defendants shall have fourteen
> (14) days from the date of this Order to produce records and information
> previously sought by Plaintiff, *so as to provide a reasonable opportunity to give
> notice to the parents of students who may be affected by this Order, as per the
> requirements of 34 C.F.R. Part 99.31(9)(ii).*

> The entry of this Order resolves the issues in the pending motion to
> compel.  ECF No. 31. The motion is hereby withdrawn and the motion is
> terminated.

(ECF No. 35 in First Case) (emphasis added). Thus, the stipulated order the parties agreed to

contemplated that Defendants were going to provide notice to parents of the students at the

school before turning over the records requested by Plaintiff.

On January 7, 2022, Superintendent Cairy sent written notice to the parents of students at

the high school that stated as follows:

Dear Parent/Guardian:

Please be advised that access to information or records regarding your student has
been ordered by Judge Levy in a lawsuit filed in the Federal Court for the Eastern
District of Michigan.  This information is protected by the provisions of the
Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and 34 C.F.R.

4

Part 99 ("FERPA").  Pursuant to FERPA, Freeland Community School District is authorized to release protected information when presented with a valid subpoena or judicial Order.  However, pursuant to FERPA you have the right to seek out further protective action relating to this information, should you desire.  This case information relating to the ongoing litigation is as follows:

| | |
|---|---|
| Name: | *Jason Kutchinski et al. v. Freeland Community School District, et al.* |
| Case#: | 19-13810 |
| Venue: | United States District Court - Eastern District of Michigan - Northern Division |

Respectfully,

Matthew A. Cairy, Superintendent
Freeland Community School District

(ECF No. 22-5).

Two days later, on January 9, 2022, Plaintiff commenced a second lawsuit by filing a "Complaint for First Amendment Retaliation." That action was given Case Number 22-10045 and was reassigned to Judge Levy, as a companion case to Case Number 19-13810 ("the Second Case").  Plaintiff's complaint in the Second Case names Defendant Matthew Cairy, in his official and individual capacities, as the sole Defendant.

In asserting his First Amendment retaliation claim in the Second Case, Plaintiff alleges that he engaged in First Amendment protected conduct by virtue of having filed a federal lawsuit (ie., the First Case).  (First Am. Compl. at ¶ 35).  Plaintiff alleges that Defendant Cairy retaliated against Plaintiff for that conduct by taking a specific adverse action against Plaintiff – "by sending the January 7, 2022 letters to parents in an attempt to embarrass, humiliate, and publicly mortify" Plaintiff and his son " in an attempt to create community pressure to cause the early termination" of the First Case.  (*Id*. at ¶ 36).  In a conclusory manner, Plaintiff alleges that the

January 7 notice contains "misrepresentations" but does not include any factual allegations to specify any misrepresentations.  (*Id*. at ¶ 28).  Plaintiff also alleges that the January 7 Letters are "overbroad," but at the same time, faults the January 7 Letters as "omitting" information.  (*Id*. at ¶¶ 26 -28).

Plaintiff alleges that, after those notices were sent out, "various persons" contacted Plaintiff, his son, or his attorney, to inquire why they were seeking to access the student records. (*Id*. at ¶ 30).  Plaintiff includes no factual allegations regarding the number or identity of any those persons or any other specific factual allegations regarding those alleged contacts.  Plaintiff further alleges that:

> 37.  The sending of false by omission, misleading, and public-shaming January 7 Letters to parents was an action and activity that would deter a person of ordinary firmness from continuing to engage in the [First Case].
>
> 38.  The sending of false by omission, misleading, and public-shaming January 7 Letters to parents was adverse action that was motivated, at least in part, by [Plaintiff's] constitutionally protected conduct.
>
> 39.  Plaintiff [ ] and his son suffered injury and damages as a result of Defendant['s] actions, decision, and related policies, including, but not limited to mental anguish and suffering.

(*Id*. at ¶¶ 37-39).  Plaintiff also asks the Court to order Defendant, "with court oversight, to issue a court-approved corrective letter to each parent who received the January 7, 2022 letter.  (Pl.'s Compl. at 11).[1]

Plaintiff's Complaint in the Second Case attached the following as exhibits: 1) Plaintiff's discovery request to Defendants in the First Case (Exhibit A); 2) Defendants' Answers to that

---

[1] On page 17 of Plaintiff's brief is what Plaintiff believes the notice to parents *should have included.*  (ECF No. 22 at PageID.302).  It is a long and detailed narrative about the case that provides the case number of the case, but does not include the case caption.

request (Exhibit B); 3) a "Stipulated Order RE FERPA" that was issued in the First Case (Exhibit C); and 4) the January 7, 2022 Letter that was sent to parents by Defendant Cairy (Exhibit D).

Judge Levy extended discovery several times and, as a result, the parties had a considerable discovery period (ie, from the filing of the case on December 30, 2019 until discovery closed in April of 2022).

On April 19, 2022, Judge Levy issued an order consolidating the two cases. (*See* ECF No. 13 in Case No. 22-10045).

On April 20, 2022, both the First Case and the Second Case were reassigned to the undersigned judge from Judge Levy, pursuant to Administrative Order 22-AO-024.

In late April of 2022, the parties filed summary judgment motions in the First Case. Neither of those motions addressed the First Amendment retaliation claim that was filed in the Second Case (that was then part of the First Case by virtue of the consolidation order).

In an Opinion and Order issued on August 4, 2022, this Court denied Plaintiff's summary judgment motion, granted Defendant's summary judgment motion, and dismissed the First Case action with prejudice. The Court issued a Judgment that same day.

Soon after that, counsel for the parties realized that their summary judgment motions did not address the First Amendment retaliation claim that Plaintiff asserted in the Second Case. After holding conferences with the parties, this Court "deconsolidated" the two cases – so that the Second Case could proceed. Plaintiff is appealing the Court's rulings in the First Case and that appeal is currently pending in the Sixth Circuit.

After the Second Case was deconsolidated, Defendant re-filed his Motion to Dismiss,

that is brought pursuant to Fed. R. Civ. P. 12(b)(6)

## STANDARD OF REVIEW

The pending motion was filed pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6)

provides for the dismissal of a case where the complaint fails to state a claim upon which relief

can be granted. The Court must construe the complaint in the light most favorable to the

plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.

2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations

that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo,*

*LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint

and any exhibits attached thereto, public records, items appearing in the record of the case and

exhibits attached to defendant's motion to dismiss so long as they are referred to in the

Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d

493, 502 (6th Cir.2001)." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th

Cir. 2008). Thus, in reviewing the pending motion, this Court may consider all of the exhibits

attached to Plaintiff's Complaint.

### ANALYSIS

In challenging Plaintiff's First Amendment retaliation claim, Defendant makes three arguments:  1) that Plaintiff has not met the injury standard for bringing a First Amendment claim; 2) Plaintiff cannot establish a prima facie claim because he has not sufficiently alleged that Defendant took an adverse action against him; and 3) Plaintiff has not sufficiently pled a retaliatory animus.  Defendant's first two arguments are related and shall be addressed together.

A First Amendment retaliation claim has three elements: 1) the plaintiff engaged in protected conduct (ie, constitutionally protected speech); 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 2) the adverse action was motivated at least in part by the plaintiff's conduct. *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 759 (6th Cir. 2022) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

"The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotion, refusal to [hire], nonrenewal of contracts, and failure to promote.'" *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted). In the First Amendment context, however, the Sixth Circuit has held that an "action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).  That "standard is an attempt to balance the tension between two propositions: First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort—like any tort—requires injury, and allowing constitutional redress for every

minor harassment may serve to trivialize the First Amendment." *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999) (citing *Thaddeus-X, supra*); *see also Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (Some adverse actions are so de minimis that they do not give rise to cognizable injuries.)

In *Mattox*, for example, the Sixth Circuit found that the two plaintiffs in that case, who asserted First Amendment retaliation claims based upon the issuance of an investigative report about the fire department, had not pleaded sufficient injury to make out a claims for First Amendment retaliation.  One of the plaintiffs was a public official but the other plaintiff (Holly) was not.  The Sixth Circuit found that Holly had not pleaded sufficient injury to support a First Amendment retaliation claim.  It found that Holly had not "allege[d] concrete injuries suffered by Holly as a result of" the revelations in the report, explaining that she "offers only generalized statements about the effect on her character and reputation, about being held up to 'ridicule, contempt, shame, and disgrace,' and about the effect on her respectability, comfort, and position in society.  Nowhere does she attempt to comcretize her personal injury.  Without anything more specific, we cannot say that this meets the constitutional threshold required for her claim of First Amendment retaliation to proceed." *Mattox,* 183 F.3d at 523.  Thus, Holly failed to allege an "adverse action" sufficient to sustain a claim of First Amendment retaliation. *Id.*

In *Wurzelbacher,* the Sixth Circuit found that a citizen's allegations were insufficient to state a First Amendment retaliation claim.  It found the adverse action pleaded by the plaintiff was insufficient to create a cause of action, where the citizen alleged "that defendants, without his knowledge, performed several improper database searches under his name." *Id*. at 584.  The plaintiff alleged "that his knowledge of the improper database searches caused him to suffer

'emotional distress,' harassment, personal humiliation, and embarrassment." *Id.*  The Sixth

Circuit found such allegations "too generalized." *Id.*  It explained that "while we have held that

embarrassment and humiliation may be sufficient to establish a First Amendment retaliation

claim, this holding was made in the context of public disclosure of intimate information

regarding a rape," and confirmed that "not all allegations of emotional injury are sufficient to

establish First Amendment retaliation," as was the case in *Maddox*.  It found that the adverse

action at issue was too inconsequential to state a First Amendment retaliation claim.  Thus, a

"person of ordinary firmness" would not be deterred or chilled by the alleged action in that case.

*Id.*

Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is

generally a question of fact.  *Wurzelbacher*, 675 F.3d at 583-84.  "Nevertheless, when a

plaintiff's alleged action is 'inconsequential,' resulting in nothing more than a 'de minims

injury,' the claim is properly dismissed as a matter of law." *Id.*

"The analysis of this factor must be tailored to the circumstances such that prisoners

might have to endure more than public employees, who in turn might have to endure more than

the average citizen." *Fritz, 592 F.3d* at 724.  Plaintiff is an ordinary citizen, "and so the level of

injury" he must allege "would be the lower limit of a cognizable injury for a First Amendment

retaliation claim." *Id.*  In *Rudd,* the Sixth Circuit provided several examples of cases wherein the

actions alleged were sufficiently severe to support a First Amendment retaliation claim in a case

asserted by an "ordinary citizen:"

> A few examples show the kinds of actions we have found sufficiently
> "adverse" under the First Amendment. Cynthia Bloch could sue a sheriff for
> disclosing humiliating and confidential details of her rape in response to her
> criticism that the sheriff had not done enough to find the  culprit. *See Bloch*, 156

> F.3d at 679–80. Tom and Melanie Briner could sue the police for failing to
> investigate a crime in response to their criticism over how the police had
> investigated an earlier crime. *See Briner v. City of Ontario*, 370 F. App'x 682,
> 700–01 (6th Cir. 2010). Sue Fritz could sue a township official for encouraging
> her employer not to renew her contract in response to her comments at public
> meetings. *See Fritz*, 592 F.3d at 725–26. David Holzemer could sue a police
> officer for delaying the renewal of a permit in response to his petitioning of a city
> councilman. *See Holzemer*, 621 F.3d at 525. Kathleen Benison could sue college
> officials for filing a suit against her in response to her husband's sponsoring a
> vote of no confidence against them. *See Benison v. Ross*, 765 F.3d 649, 660 (6th
> Cir. 2014). And Frank Barrett could sue a judge for falsely telling the media that
> he had been "stalking" her in response to his public criticisms. *See Barrett*, 130
> F.3d at 262.

*Rudd*, 977 F.3d at 514-15.

Measured against the above caselaw, and given the rather unique facts and circumstances

here, this Court agrees with Defendant that Plaintiff has not alleged a viable First Amendment

retaliation claim.

Plaintiff has not alleged an adverse action that is akin to any of those discussed in *Rudd*

(ie, disclosing humiliating and confidential details of an incident like a rape, failing to

investigate a crime, encouraging a citizen's employer not to renew their contract, delaying the

renewal of a permit, filing suit against a citizen, or falsely reporting stalking allegations to the

media).

Rather, the alleged adverse action here is that Defendant sent the January 7, 2022 notice

to parents.  Notably, the federal case that existed when the notices were sent out (ie, the First

Case) was already a matter of public record and identified Jason Kutchinski as the named

Plaintiff.  It was Plaintiff's own actions in the First Case, in seeking discovery that included

student information protected by FERPA, that led to the sending of the notice.  Indeed, Plaintiff

*stipulated to the Order* that authorized Defendant to "give notice to the parents of students,"

before producing the information sought by Plaintiff, "per the requirements of 34 C.F.R. Part 99.31(9)(ii)."  Although Plaintiff's complaint alleges in a conclusory manner that the notice contains "misrepresentations," Plaintiff does not include any well-pleaded factual allegations as to any misrepresentations in the notice that was sent.  And, of course, the Court has the January 7, 2022 notice, and can consider it for purposes of the pending motion.  There are no misrepresentations in it.  Plaintiff alleges that, after the January 7, 2022 notice was sent, unspecified "various persons" contacted Plaintiff, his son, or his attorney, but includes no further factual allegations as to who or how many people contacted them.  The only allegations regarding Plaintiff's claimed injuries is the single vague allegation that Plaintiff "and his son suffered injury and damages" "including, but not limited to mental anguish and suffering." (Compl. at ¶ 39).

This alleged harm to Plaintiff is too minimal to be constitutionally cognizable.  *Maddox*, 183 F.3d at 523; *Wurzelbacher*, 675 F.3d at 584-85; *see also McComas v. Board of Educ., Rock Hill Local Sch. Dist.*, 422 F. App'x 462, 469 (6th Cir. 2011) (holding that a public statement about who was the "initial aggressor" during a board meeting was "not sufficiently embarrassing to constitute an adverse action" for purposes of First Amendment retaliation claim).

Plaintiff relies heavily on the Sixth Circuit' decision in *Wenk v. O'Reilly*, 783 F.3d 585 (6th Cir. 2015).  That reliance is misplaced.

In *Wenk*, the plaintiffs were parents of a disabled girl.  They alleged that the defendant, a school official, filed a child abuse report about the father in retaliation for the couple having advocated to change their child's educational plan.  The Defendant did not contest that the parents' advocacy about the education plan was protected activity.  Rather, they argued the

parents could not establish a First Amendment retaliation claim because the defendant official was a mandatory reporter of child abuse and, "as a matter of law, a mandatory reporter's report of child abuse is not an adverse action" where there is evidence in the record sufficient to support a reasonable basis to make a report. *Id.* at 594.

The Sixth Circuit affirmed the district court's denial of qualified immunity to the defendant, concluding that a report of child abuse would chill a person of ordinary firmness from engaging in protected speech. The court acknowledged that petty slights and minor annoyances do not qualify as adverse actions that could support a First Amendment retaliation claim. It explained, however that "a report of child abuse has '*powerfully dissuasive' consequences*" that would lead reasonable parents to refrain from engaging in protected activity. *Id*. at 595 (citation omitted) (emphasis added) And although it had previously only found false reports to be sufficient adverse actions, it found that the "truth or lack thereof of a child abuse report is not dispositive to whether the report would chill a person from engaging in protected conduct." *Id*. at 594.

But there is a world of difference between a report of suspected child abuse against a parent and the alleged adverse action here. A report of suspected child abuse has unique and potentially life-changing consequences, and thus it would be enough to deter a parent of ordinary firmness from engaging in protected activity:

> To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; "petty slights or minor annoyances" cannot qualify. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Having a government official appear at their door armed not only with the power to take their disabled child away but also with allegations that they are actively and nearly fatally abusing that child would surely be enough to dissuade many reasonable parents from seeking accommodations at school. The type of intrusive investigation that

14

Tennessee officials must conduct of such parents' homes and children to complete a DCS investigation, *see, e.g.*, Tenn.Code Ann. § 37–1–406, could be powerfully dissuasive in its own right and only cements that conclusion. Not surprisingly, then, this Court and other courts have treated the making of such reports as adverse. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 588–89 (6th Cir.2008) (listing "making a false report to Children Services" among the actions that would "chill a person of ordinary firmness" from engaging in protected activity); *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir.2002) (finding that "threatening (and instituting) child welfare investigations in response to plaintiffs' medically excused absences from school" constituted retaliatory adverse action under Section 504 and the ADA).

*A.C. ex rel. J.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013). *Wenks* does not aid Plaintiff.

## CONCLUSION & ORDER

Plaintiff's alleged injuries in this case are too minimal to be constitutionally cognizable.

*Maddox*, 183 F.3d at 523; *Wurzelbacher,* 675 F.3d at 584-85; *McComas,* 422 F. App'x at 469.

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES THIS ACTION WITH PREJUDICE.**

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  December 8, 2022